**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**July 22, 2026**

# In the Court of Appeals of Georgia

A26A1167. NEUGARD v. THE STATE.

HODGES, Judge.

Following a bench trial, a judge convicted Ronald C. Neugard of two counts each of aggravated sodomy, aggravated child molestation, and incest. Neugard appeals following the denial of his motion for new trial. In his sole enumeration of error, Neugard contends that he is entitled to a new trial because "the trial court failed to enter an order detailing its reasons for clearing the courtroom when the victim testified." Finding no error, we affirm.

The relevant undisputed facts show that prior to trial the State asked the trial court to clear the courtroom except for "necessary personnel" during the victim's testimony, who at the time of her testimony was 12 years of age. Neugard objected to

the courtroom being cleared unless the "proper ... analysis" was performed. The court noted Neugard's objection, but declared that it would clear the courtroom. When the State called the victim to testify, it requested that the courtroom be cleared per the court's prior ruling. Defense counsel renewed his objection and noted that two of Neugard's friends, who were there as spectators to support Neugard, the father of the victim, and other courtroom personnel were in the courtroom at the time. The trial court cleared the courtroom, but allowed the victim's father, necessary courtroom personnel, and a detective who had previously testified to remain in the courtroom during the victim's testimony.

Neugard argues on appeal that he is entitled to a new trial because the trial court failed to issue an order detailing its reasons for clearing the courtroom when the victim testified. Specifically, Neugard asserts that prior to closing the courtroom, the trial court was required to perform the analysis detailed by the United States Supreme Court in *Waller v. Ga.*, 467 US 39, 48(II)(B) (104 SCt 2210, 81 LE2d 31) (1984), and make findings of fact showing it performed the analysis. Under that analysis, when a party seeks full closure of an entire hearing,

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader

than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

Id. (addressing the full closure of a seven-day suppression hearing). We review a trial court's closure of the courtroom for an abuse of discretion, *Spikes v. State*, 353 Ga. App. 454, 456(a) (838 SE2d 121) (2020), and we find no such abuse in this case.

Generally, a criminal defendant has the right to a public trial. See US Const. Amend. VI and Ga. Const. of 1983, Art. I, Sec. I, Par. XI. However, this right is not absolute; the right may be limited in rare instances where "the balance of interests [are] struck with special care." *Spikes*, 353 Ga. App. at 456(a) (citation and punctuation omitted). One such interest requiring a partial court closure is the protection of children. "Georgia statutory law mandates the partial closure of a courtroom when a person under the age of 16 testifies in a criminal case concerning a sexual offense, although the statute permits certain individuals, including the defendant's immediate family members, to remain in the courtroom." *Alexander v.*

*State*, 313 Ga. 521, 525(2) (870 SE2d 729) (2022). Under OCGA § 17-8-54,[1] when a child under the age of 16 testifies concerning any sexual offense,

> the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, victim assistance coordinators, victims' advocates, and such other victim assistance personnel as provided for by Code Section 15-18-14.2, jurors, newspaper reporters or broadcasters, and court reporters.

The rationale behind OCGA § 17-8-54 is "based upon a legislative determination that there is a compelling state interest in protecting children while they are testifying concerning a sex offense." *Spires v. State*, 357 Ga. App. 440, 445(2)(a) (850 SE2d 854) (2020) (citation and punctuation omitted). The statute provides no discretion for trial courts when a victim of sexual violence under the age of 16 is testifying. It explicitly mandates that the court "shall clear the courtroom" of all persons except those designated in the statute. OCGA § 17-8-54.

Clearly OCGA § 17-8-54 applies in this case. The question is whether the trial court was required to perform a *Waller* analysis before it cleared the courtroom. To

---

[1] No issue regarding the constitutionality of OCGA § 17-8-54 is presented in this case.

answer this question, we must determine whether the trial court called for a partial or full closure of the courtroom. *Hicks v. State*, 366 Ga. App. 599, 604(2) (884 SE2d 16) (2023). "A partial closure occurs when some members of the public are permitted to attend, while a total courtroom closure involves exclusion of all members of the public." *Jackson v. State*, 339 Ga. App. 313, 316(2)(a) (793 SE2d 201) (2016). Accord *Hicks*, 366 Ga. App. at 604(2) ("A total courtroom closure occurs when no members of the public are allowed to attend the trial, whereas a partial closure occurs when some members of the public, such as the press, are permitted to attend."). "This distinction matters because when the courtroom is only partially closed to spectators, the impact of the closure is not as great, and not as deserving of such a rigorous level of constitutional scrutiny." *Jackson*, 339 Ga. App. at 316(2)(a) (citation and punctuation omitted).

Contrary to Neugard's argument, this Court repeatedly has held that a partial courtroom closure under OCGA § 17-8-54 does not violate a defendant's constitutional right to a public trial even when the closure is ordered without any case-specific findings. See, e.g., *Hicks*, 366 Ga. App. 604(2) ("[T]he partial closure of the courtroom — which allowed members of the press, among others, to remain in the

courtroom — was permitted under OCGA § 17-8-54 and did not violate [the defendant's] constitutional right to a public trial."); *Spires*, 357 Ga. App. at 445(2)(a) (finding that a partial closure of the courtroom under OCGA § 17-8-54, which allowed press and others to remain, did not violate a defendant's constitutional right to a public trial); *Chamberlain v. State*, 347 Ga. App. 775, 779(2) (819 SE2d 303) (2018) ("The partial closure of the courtroom permitted under [OCGA § 17-8-54] does not violate a defendant's constitutional right to a public trial.") (citation and punctuation omitted); *Clark v. State*, 309 Ga. App. 749, 751(2) (711 SE2d 339) (2011) (same). Inherent in these decisions is the conclusion that a *Waller* analysis is not required for partial closures under OCGA § 17-8-54 because the legislature has already determined "that there is a compelling state interest in protecting children while they are testifying concerning a sex offense" and "[b]y its terms, OCGA § 17-8-54 authorize[s] the trial court to clear the courtroom" while minor victims testify. *Tolbert v. State*, 321 Ga. App. 637(1) (742 SE2d 152) (2013) (citation and punctuation omitted). However, if the trial court orders a more restrictive closure than the statute permits, a *Waller* analysis would be necessary. See *Spikes*, 353 Ga. App. at 457-60(b) (reversing conviction because the trial court ordered that the defendant's immediate family

6

members leave the courtroom while the victim testified but did not perform a *Waller* analysis); *Jackson*, 339 Ga. App. at 313, 316-21(2) (reversing conviction where the trial court ordered a complete courtroom closure during the testimony of a victim who was 16 years old at the time of trial without performing a *Waller* analysis); *Hunt v. State*, 268 Ga. App. 568, 571(1) (602 SE2d 312) (2004) (recognizing that if the defendant had objected, the trial court would have had an opportunity either to allow the defendant's immediate family and any press members to remain in the courtroom or engage in the four-part *Waller* inquiry).

The facts in this case show that the trial court only partially closed the courtroom, and it did not abuse its discretion in doing so under OCGA § 17-8-54. It is undisputed that the victim was under the age of 16 when she took the stand at Neugard's trial to testify about sexual offenses. In addition, contrary to Neugard's contention, the trial court did not close the courtroom to "everyone." The court allowed the victim's father, necessary personnel, and a detective to remain in the courtroom, and it appears from the record that the only individuals actually asked to leave the courtroom were two friends of Neugard and, possibly, members of the community there to support Neugard. In fact, Neugard's attorney told the victim

during her testimony that she was "very brave for coming here and telling all these strangers this difficult thing." There is no indication in the record that anyone who self-identified under the categories listed in OCGA § 17-8-54 was excluded from the courtroom or that anyone from those categories who wished to enter the courtroom was not permitted to do so. See *Chamberlain*, 347 Ga. App. at 779-80(2) (finding that a partial closure of the courtroom to any individual not falling under a category in OCGA § 17-8-54 did not violate the defendant's right to a public trial); *Clark*, 309 Ga. App. at 751(2) (finding a partial closure of the courtroom did not exclude any category of persons identified in OCGA § 17-8-54 and therefore did not violate the defendant's right to a public trial). The fact that Neugard's friends and supporters were directed to clear the courtroom does not alter this result since those individuals do not fall under the list of exempted individuals in OCGA § 17-8-54. The statute is clear that only *immediate* family are exempted, and supporters, even if close friends, do not fall within this narrow group. See *Chamberlain*, 347 Ga. App. at 780(2) (holding that "immediate family" as used in OCGA § 17-8-54 includes "a person's parents, spouse, children, and siblings[,]" not a defendant's sister-in-law) (citation and punctuation omitted).

Because Neugard has not shown that the trial court violated OCGA § 17-8-54 in any specific manner by identifying "any person or category of persons who [were] wrongfully excluded under OCGA § 17-8-54[,]" the partial closure of the courtroom under that statute did not violate his constitutional right to a public trial. *Chamberlain*, 347 Ga. App. at 780(2). Accord *Clark*, 309 Ga. App. at 751(2).

*Judgment affirmed. Barnes, P. J., and Markle, J., concur.*